UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

RONALD HAYES,

                                        Plaintiff,       **Docket #: 10-cv-1201 (DNH)(RFT)**


                    -against-


THE STATE OF NEW YORK D.O.C.S.; C.O.
BURCH, Great Meadow Correctional Facility; C.O.
WRIGHT, Great Meadow Correctional Facility; C.O.
JONES, Great Meadow Correctional Facility;
SMITH & WESSON; and the   STATE OF NEW
YORK,

                                        Defendants.

------------------------------------------------------------------x


## SMITH & WESSON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     PRELIMINARY STATEMENT ...................................................................... 2

        A.      Plaintiff's Testimony Concerning The Alleged
                Excessive Force Incident That Precipitated This Lawsuit....................... 2

        B.      Summary Of Plaintiff's Claims Against Smith & Wesson....................... 4

        C.      The Complete Lack Of Evidence Supporting Plaintiff's
                Product Defect Claims Against Smith & Wesson ................................... 5

        D.      Due To Plaintiff's Complete Lack Of Evidence To Support
                His Defect Claim And, Further, Because Of His Inability
                To Rule Out More Likely Alternative Causes For The Left
                Cuff's Failure To Unlock, Plaintiff's Product Defect Claims
                Must Be Dismissed .................................................................................. 7

III.    SUMMARY JUDGMENT STANDARD ........................................................... 9

IV.     ARGUMENT.................................................................................................... 10

        A.      Overview Of New York Product Liability Law ...................................... 10

        B.      The Reasons Why All Of Plaintiff's Product Liability Claims Fail ........ 11

                1.      Because Plaintiff Cannot Point To A Specific Defect
                        In This Lost Product, He Must Establish A Defect
                        Through Circumstantial Evidence Alone.  But Since
                        Plaintiff Is Unable To Exclude Other, More Likely
                        Causes For The Occurrence, He Cannot Rely On
                        Circumstantial Evidence To Establish a Defect............................ 11

                2.      Moreover, Plaintiff's Failure To Come Forward
                        With Competent Expert Testimony To Support His
                        Claim Of A Defect In This Complex Mechanical
                        Product Is Sufficient Reason Alone To Grant
                        Summary Judgment In Smith & Wesson's Favor........................ 15

i

## TABLE OF CONTENTS (cont.)

Page

3.   Finally, Plaintiff's Product Liability Claims Also
Fail Because He Cannot Establish That The
Handcuffs Were Being Used In Accordance
With Their Intended Use ............................................................. 17

C.   Additional Reasons Why Plaintiff's Strict
Products Liability And Negligence Claims Fail ....................................... 18

1.   There Is No Manufacturing Defect ............................................... 19

2.   There Is No Design Defect .......................................................... 19

3.   There Is No Warning Defect ........................................................ 20

D.   Additional Reasons Why Plaintiff's Implied Warranty Claim Fails ....... 21

E.   Additional Reasons Why Plaintiff's Express Warranty Claim Fails ....... 23

V.   CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Colon v. BIC USA, Inc., 199 F.Supp.2d 53 (S.D.N.Y. 2001) ........................................... 18

Cuntan v. Hitachi KOKI USA, Ltd., No. 06–CV–3898 (RRM)(CLP),
    2009 WL 3334364 (E.D.N.Y. Oct. 15, 2009) ........................................................ 20-21

Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993) ....................................... 16

Denny v. Ford Motor Copr., 87 N.Y.2d 248, 639 N.Y.S.2d 250,
    662 N.E.2d 730 (N.Y. 1995) .................................................................................... *passim*

Gilks v. Olay Co., Inc., 30 F.Supp.2d 438 (S.D.N.Y. 1998) ............................................ 12

Gonzalez v. Morflo Indus., Inc., 931 F. Supp. 159 (E.D.N.Y. 1996) ............................... 22

Horowitz v. Stryker Corp., 613 F.Supp.2d 271 (E.D.N.Y. 2009) .................................... 23

Lewis v. White, No. 08 Civ. 7480(SCR)(GAY),
    2010 WL 6465230 (S.D.N.Y. July 1, 2010) .......................................................... 21, 23

*Liz v. Zinsser & Co.,* 253 A.D.2d 413,
    676 N.Y.S.2d 619 (App.Div.1998) ......................................................................... 20

Maciarello v. Empire Comfort Sys., 16 A.D.3d 1009,
    792 N.Y.S.2d 671 (N.Y.App. Div.3d Dep't 2005) ................................................ 12

Mateo v. Martuscello, C.A. No. 9:10–cv–1254 (MAD/RFT),
    2012 WL 2178931 (N.D.N.Y. May 15, 2012) ....................................................... 9-10

*McCarthy v. Olin Corp.,* 119 F.3d 148 (2d Cir.1997) ..................................................... 18

Morritt v. Stryker Corp., No. 07–CV–2319 (RRM)(RER),
    2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) ........................................................ 20

Pinello v. Andreas Stihl Ag & Co. KG, No. 8:08–CV–00452 (LEK/RFT),
    2011 WL 1302223 (N.D.N.Y. Mar. 31, 2011) ...................................................... 11, 15

Preston v. Peter Luger Enterp., Inc., 51 A.D.3d 1322,
    858 N.Y.S.2d 828 (N.Y.App. Div.3d Dep't 2008) ............................................... 19

Quintanilla v. Komori Am. Corp., No. CV 04-5227(ETB), 2007 WL 1309539
    (E.D.N.Y. May 4, 2007), aff'd, No. 07–2375–CV, 2009 WL 320186
    (2d Cir. Feb. 10, 2009) ........................................................................................... 16, 17

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

### Cases

Ramos v. Howard Indust., Inc., 10 N.Y.3d 218,
  855 N.Y.S.2d 412, 885 N.E.2d 176 (N.Y. 2008)..................................................... 8, 11

Russo v. JIL Industr., No. 1:04–CV–1179, 2006 WL 5278223
  (N.D.N.Y. Nov. 20, 2006) ....................................................................................... 16-17

Sosna v. American Home Prod., 298 A.D.2d 158,
  748 N.Y.S.2d 548 (N.Y.App. Div.1st Dep't 2002) ............................................... 21

Speller v. Sears, Roebuck & Co., 100 N.Y.2d 38790,
  790 N.E.2d 252 (N.Y. 2003).................................................................................... 12

Tardello v. RJR Nabisco, 178 A.D.2d 737, 576 N.Y.S.2d 965
  (N.Y.App. Div.3d Dep't 1991) ................................................................................ 11

Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102,
  463 N.Y.S.2d 398, 450 N.E.2d 204 (N.Y. 1983).................................................... 10, 20

Wick v. Wabash Holding Corp., 801 F.Supp.2d 93 (W.D.N.Y. 2011) ........................... 10, 23-24

## SMITH & WESSON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

AND NOW comes Defendant Smith & Wesson Corp. ("Smith & Wesson"), through its counsel, and files this Memorandum of Law in Support of its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. Smith & Wesson submits that it is entitled to final summary judgment on all claims because no genuine issue of material fact exists.[1] This is so because Plaintiff has failed to come forward with competent evidence to establish a defect in the Defendant's product.

### I.   INTRODUCTION

This civil rights and product liability lawsuit stems from an alleged excessive force incident involving the Plaintiff, Ronald Hayes, at Great Meadow Correctional Facility ("Great Meadow") on July 9, 2009. As regards Smith & Wesson, Plaintiff alleges that the Smith & Wesson manufactured handcuffs used to restrain him on the incident date would not open because the cuffs malfunctioned. In particular, Plaintiff appears to claim that a defect or flaw existed in the handcuffs' locking mechanism.

Despite the fact that Plaintiff has had months of discovery to try and obtain evidentiary support for his flawed defect claim, the record evidence establishes beyond any doubt that Smith & Wesson is entitled to final summary judgment. To summarize those reasons:

- The Smith & Wesson handcuffs at issue – Smith & Wesson Model 90 – are somewhere between 33 and 57 years old. Because the Model 90 handcuffs were last produced in 1979, they are now obsolete. That said, when the handcuffs were produced, they were state-of-the-art. Model 90 handcuffs were also never subject to a recall. Simply put, the Model 90 handcuffs were properly designed and properly manufactured and did not pose any unreasonable danger or risk of injury.

---

[1] Under Local Rule 7.1(a)(3), a separate Statement of Materials Facts is being submitted in support of this Motion.

- The handcuffs at issue were discarded by the State Defendants.[2]  Before they were lost, Plaintiff did not inspect, examine, or test the handcuffs to corroborate his claim of a defect in the handcuffs' locking mechanism.  In fact, Plaintiff has no absolutely no direct evidence of a defect in Smith & Wesson's product.  Moreover, Plaintiff has also failed to identify an expert who can opine on the design, manufacture, and warnings of this complex mechanical product.

- Instead, Plaintiff points to a single piece of circumstantial evidence to support his product liability claims against Smith & Wesson:  the fact that on July 9, 2009, Great Meadow's correctional officers could not unlock the left cuff of a pair of Smith & Wesson Model 90 handcuffs.  Based on this single piece of circumstantial evidence, Plaintiff asserts that the handcuffs' locking mechanism must have malfunctioned due to some unidentified defect.

- Because Plaintiff cannot identify a specific defect in the handcuffs, in order to defeat Smith & Wesson's summary judgment motion, he must exclude all potential causes for the failure of the left cuff to unlock that are not attributable to Smith & Wesson.  He cannot come close to doing so.  First, Plaintiff cannot rule out the possibility that the left cuff would not open on July 9, 2009 because corrections officials did not use the correct key to open it.  Second, Plaintiff cannot exclude the obvious possibility that, at some point during the 33 to 57 year life of this set of handcuffs, the locking mechanism was damaged as a result of misuse or improper maintenance.

- Moreover, Plaintiff's failure to come forward with competent expert testimony to support his claim of a defect in this complex mechanical product is sufficient reason alone to grant summary judgment in Smith & Wesson's favor.

- Finally, Plaintiff's product liability claims also fail because, on the current record, he cannot establish that the handcuffs were being used in accordance with their intended use.

## II.   PRELIMINARY STATEMENT

### A. Plaintiff's Testimony Concerning the Alleged Excessive Force Incident That Precipitated This Lawsuit

Plaintiff is a prisoner housed in the New York State Correctional system, and is currently

serving two 20 years to life sentences for armed robbery.[3]  On July 9, 2009, Plaintiff was housed

at Great Meadow.[4]  Great Meadow's evening "rec time" is held from 7 to 10 p.m. in the "Big

---

[2] The State of New York, D.O.C.S., and the several individual corrections officers who are named defendants are collectively referred to here as the State Defendants.

[3] *See* September 10, 2012 Deposition Transcript of Ronald Hayes ("Hayes Transcript"), 66:3-19, attached to the Attorney Affidavit as Exhibit "A."  Note, however, that according to Plaintiff, he may soon be re-sentenced on one or both convictions. *See id.*, 123:7-22.

[4] *Id.* at 23:2-4.

Yard."[5]   During rec time on July 9, 2009, a melee broke out.[6]   Great Meadow's corrections

officers responded to the situation by, *inter alia*, ordering the prisoners in the area to "get down"

and firing tear gas into the Big Yard to quell the violence.[7]

When the melee broke out, Plaintiff was standing near a bank of phones, minding his

own business.[8]   Nevertheless, Corrections Officer Burch confronted Plaintiff, threw him to the

ground violently, and aggressively placed him in handcuffs.[9]   Importantly, Plaintiff alleges that

Officer Burch immediately locked the handcuffs too tightly.[10]   Plaintiff screamed in pain and

told Officer Burch that the cuffs were too tight.[11]   Plaintiff additionally told Officer Burch that he

had a pre-existing injury in his right arm (which was the result of his having been shot several

times years earlier).[12]   Officer Burch, along with the other corrections officers present, ignored

Plaintiff's complaints.[13]   Indeed, Plaintiff was forced to lie on the ground for between 10 and 40

minutes with the handcuffs locked too tightly.[14]   Making matters worse, Plaintiff alleges, during

the 10 to 40 minutes he spent on the ground in handcuffs that were locked too tightly, the

corrections officers punched and kicked him.[15]

Once things were under control in the Big Yard, Plaintiff was escorted to the prison

infirmary by Officer Jones.[16]   During the five to ten minute walk to the infirmary, Plaintiff

---

[5] *Id.* at 81:1-82:25.
[6] *Id.* at 23:10-24:7.
[7] *Id.* at 28:6-29:7.
[8] *Id.* at 82:8-84:11.
[9] *Id.* at 32:2-13.
[10] *Id.* at 33:16-18.
[11] *Id.* at 33:19-23.
[12] *Id.* at 35:1-36:1.
[13] *Id.* at 99:12-19.
[14] *Id.*
[15] *Id.* at 99:20-22.
[16] *Id.* at 43:25-44:2.

3

continued to complain that his hands were hurting and that the cuffs were locked too tightly; Officer Jones responded by pulling Plaintiff's wrists up to inflict more pain.[17]

When Plaintiff arrived in the infirmary, Officer Jones and other corrections officers attempted to remove the cuffs.[18]  They succeeded in unlocking the right cuff.[19]  But the officers could not open the left cuff, despite repeated attempts to do so.[20]  Plaintiff eventually requested that the officers stop trying to remove the cuffs because their efforts were only exacerbating the pain, but the officers ignored his requests.[21]  After this had gone on for several hours, Plaintiff alleges that he was finally transported to an outside hospital – Glens Falls – where hospital staff were able to cut the cuffs off successfully.[22]  As a result of the events of July 9, 2009, Plaintiff alleges that he sustained serious injuries, including bruising and scarring to his "wrists, face, and knees"; pain "in his arms and shoulders"; "elevated blood pressure"; "emotional duress"; and carpal tunnel syndrome.[23]

### B.  Summary of Plaintiff's Claims Against Smith & Wesson

In addition to filing civil rights claims against the State Defendants, Plaintiff has also filed product liability claims against Smith & Wesson stemming from the July 9, 2009 incident at Great Meadow.[24]  The crux of Plaintiff's claims against Smith & Wesson is that the handcuffs used to restrain him on the incident date, which were manufactured by Smith & Wesson, would

---

[17] *Id.* at 46:24-48:9, 101:4-102:15.

[18] *Id.* at 106:15-107:13.

[19] *Id.* at 110:23-25, 111:8-10.

[20] *Id.* at 55:10-19.

[21] *Id.* at 53:19-54:12.

[22] *Id.* at 112:2-113:4.

[23] *See* Complaint, ¶ 18, attached to the Attorney Affidavit as Exhibit "B," and Hayes Transcript, 124:10-125:6.

[24] The Complaint also includes claims on behalf of Plaintiff's wife, Nicole Hayes, for "loss of consortium,' 'alienation of spousal affection,' and emotional distress."  *See* This Court's January 20, 2011 Decision and Order, Doc. #7.  On January 20, 2011, Nicole Hayes – and all claims brought on her behalf – were dismissed from this action. *Id.*

not open because the cuffs malfunctioned.[25]  Though not entirely clear, it appears that Plaintiff is attributing the alleged malfunction to some unidentified flaw in the handcuffs' locking mechanism.[26]  Plaintiff does not specify whether this flaw is attributable to a design or manufacturing defect.[27]  Plaintiff additionally appears to claim that Smith & Wesson failed to warn or instruct users regarding the cuffs' potential to malfunction in the manner alleged in his Complaint.[28]

As a result of these alleged defects in Smith & Wesson's product, Plaintiff claims to have sustained injuries.[29]  More specifically, Plaintiff appears to allege that he sustained injuries attributable to a combination of two factors:  (1) on July 9, 2009 Great Meadow corrections officers intentionally over-tightened the handcuffs placed on Plaintiff, causing extreme pain, and (2) his pain and injuries were exacerbated by the fact that corrections officers could not easily remove the handcuffs because the handcuffs' locking mechanism allegedly malfunctioned.[30]

## C. The Complete Lack of Evidence Supporting Plaintiff's Product Liability Claims Against Smith & Wesson

The handcuffs used to restrain Plaintiff on July 9, 2009 are Smith & Wesson Model 90.[31]  Model 90 handcuffs were produced from 1955 to 1979.[32]  They have now been out of production for over 30 years.[33]  There is no evidence documenting the specific age of the subject

---

[25] *See* Complaint, ¶ 26.

[26] *See id.*

[27] *See id.*

[28] *See, generally, id.*

[29] *See id.*, ¶¶ 18-20.

[30] *See, generally,* Complaint.

[31] *See* State Defendants' Responses to Smith & Wesson's Requests for Admission #2, attached to the Attorney Affidavit as Exhibit "C."

[32] *See* Smith & Wesson's Answer to Plaintiff's Interrogatory #29, attached to the Attorney Affidavit as Exhibit "D."

[33] *See id.*

handcuffs.[34]  Therefore, all that is known is that the handcuffs are somewhere between 33 and 57 years old.

The set of handcuffs used to restrain Plaintiff on July 9, 2009 was destroyed by the State Defendants prior to the commencement of this lawsuit.[35]  Prior to discarding the handcuffs, the State Defendants did not examine, inspect, or test the handcuffs.[36]  More importantly, Plaintiff never examined, inspected, or tested the handcuffs to corroborate his claim that the locking mechanism was defective.[37]  Therefore, Plaintiff can point to absolutely no direct evidence of a defect in the Model 90 handcuffs.  Moreover, Plaintiff has retained no expert who will opine that the Model 90 handcuffs are defective in design, manufacture, or warnings.

Because the handcuffs are lost, Smith & Wesson is unable to examine, inspect, or test them in order to directly rebut Plaintiff's claim that the locking mechanism on this decades-old product malfunctioned due to some unidentified defect.  Nevertheless, Smith & Wesson can affirmatively state that, "[b]ased on decades of experience in the design and manufacture of restraints such as the Model 90, . . . this handcuff was state-of-the-art when produced between 1955 and 1979 . . . ."[38]  Indeed, the Model 90 handcuffs were "properly designed and properly manufactured and did not pose any unreasonable danger or risk of injury . . . ."[39]  This is evidenced by the fact that "Smith & Wesson has been in the business of manufacturing quality

---

[34] *See* State Defendants' Answer to Smith & Wesson's Interrogatory #5, attached to the Attorney Affidavit as Exhibit "E."

[35] *See* State Defendants' Response to Smith & Wesson's Request to Admit #1; *see also* State Defendants' Internal Log Book, which is appended as Exhibit 1 to the State Defendants' Dec. 21, 2012 Letter to the Court (*see* Doc. 79-1), and is attached to the Attorney Affidavit accompanying this Motion as Exhibit "J" (confirming, in an entry dated August 29, 2009, that the handcuffs were destroyed).

[36] *See* State Defendants' Answer to Smith & Wesson's Interrogatory #10.

[37] *See* Hayes Transcript, 114:8-115:5.

[38] *See* Smith & Wesson's Responses to Plaintiff's Requests for Admissions, Request #4, attached to the Attorney Affidavit as Exhibit "G."

[39] *See* Smith & Wesson's Answer to Plaintiff's Interrogatory #34.

handcuffs for over seven (7) decades,"[40] and Smith & Wesson handcuffs continue to be "widely used by law enforcement agencies throughout the United States."[41]   Additionally, Model 90 handcuffs were never subject to a recall.[42]  Finally, the Model 90 was designed with a secondary lock that, when properly engaged, prevents over-tightening – the very issue that Plaintiff alleges caused his injuries.[43]   In this case, Corrections Officer Burch – the individual who placed Plaintiff in handcuffs on July 9, 2009 – has acknowledged that he did not apply the secondary lock in order to prevent the cuffs from over-tightening.[44]  Simply put, the Model 90 provided law enforcement with "an effective restraint when properly maintained, properly used and properly applied."[45]

Moreover, the record evidence establishes that the specific set of handcuffs at issue in this case is between 33 and 57 years old.[46]  Throughout its 33 to 57 year life, there is absolutely no evidence that the handcuffs had ever malfunctioned in the past.[47]  Put another way, there is no evidence that the handcuffs were defective at the time they left Smith & Wesson's control.  As such, the available evidence establishes that this particular pair of handcuffs was not defective.[48]

### D. Due to Plaintiff's Complete Lack of Evidence To Support his Defect Claim And, Further, Because of His Inability to Rule Out More Likely Alternative Causes For The Left Cuff's Failure to Unlock, Plaintiff's Product Defect Claims Must Be Dismissed

---

[40] *See* Smith & Wesson's Response to Plaintiff's Request to Admit #7.

[41] *See* Affidavit of Herb Belin, Smith & Wesson Product Manager, ¶ 5, attached to the Attorney Affidavit as Exhibit "H."

[42] *See* Smith & Wesson's Answer to Plaintiff's Interrogatory #20.

[43] *See* Smith & Wesson's Responses to Plaintiff's Requests for Admission #1 and #4.

[44] *See* Corrections Officer Burch's Answer to Plaintiff's Interrogatory #20, attached to the Attorney Affidavit as Exhibit "M."

[45] *See* Smith & Wesson's Answer to Plaintiff's Interrogatory #33.

[46] *See* Smith & Wesson's Response to Plaintiff's Interrogatory #29.

[47] *See* the State Defendants' Answer to Smith & Wesson Interrogatory #12 (noting that the State Defendants are "unaware of any other individuals who have been injured by the handcuffs which are the subject of this lawsuit").

[48] *See* Belin Affidavit, ¶ 9.

Plaintiff points to a single piece of circumstantial evidence to support his product liability claims against Smith & Wesson:  on July 9, 2009, Great Meadow's correctional officers could not unlock the left cuff of a pair of Smith & Wesson Model 90 handcuffs.  Based on this single piece of circumstantial evidence, Plaintiff asserts that the handcuffs' locking mechanism must have malfunctioned.  Because Plaintiff has no direct evidence of a defect in Smith & Wesson's product, he must therefore prove his case circumstantially.

In order do so, New York law requires that he (1) prove that the product did not perform as intended, and (2) exclude all other causes for the occurrence that are not attributable to Smith & Wesson. *See Ramos v. Howard Indust., Inc.,* 10 N.Y.3d 218, 855 N.Y.S.2d 412, 885 N.E.2d 176, 178 (N.Y. 2008) (citations omitted).  More specifically, Plaintiff must rule out alternative reasons that may explain why corrections officials could not open the left cuff.  Because Plaintiff cannot do so, summary judgment in Smith & Wesson's favor is proper.

First, Plaintiff cannot out rule out the possibility that the left cuff would not open on July 9, 2009 because corrections officials did not use the correct key to open the handcuffs.  By way of background, "each set of Smith & Wesson handcuffs is supplied with a Smith & Wesson key, and optimal functioning of the locking mechanism requires use of the Smith & Wesson key."[49] Discovery has established that the State Defendants purchase handcuffs from a number of manufacturers in addition to Smith & Wesson, including Peerless Handcuff Company and Galls.[50]   Importantly, the State Defendants acknowledge that they have "no evidence documenting what key(s) were used to attempt to remove the handcuffs allegedly placed on Plaintiff on July 9, 2009."[51]   Therefore, the most obvious reason why the handcuffs allegedly

---

[49] *See* Belin Affidavit, ¶ 7.

[50] *See* State Defendants' Answer to Smith & Wesson's Interrogatory #2.

[51] *See* State Defendants' Response to Smith & Wesson's Request to Admit #4.

failed to open on July 9, 2009 is that corrections officials used the wrong key – i.e., a key associated with a set of handcuffs produced by an entirely different manufacturer.

Second, Plaintiff cannot rule out the obvious possibility that, at some point during the 33 to 57 year life of this set of handcuffs, the locking mechanism was damaged as a result of misuse or improper maintenance.[52]  Indeed, because the handcuffs have been discarded, it is impossible to exclude damage to the locking mechanism caused by an external source – completely unrelated to any pre-existing product flaw – as the reason for the left cuff's failure to open.

## III.  SUMMARY JUDGMENT STANDARD

As set forth by this Court in the recent case of *Mateo v. Martuscello,* the following legal standard governs this summary judgment motion:

> Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 247 (1986); *accord F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d at 54 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).
>
> To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

---

[52] *See* Smith & Wesson's Response to Plaintiff's Request to Admit #7 (noting that "a handcuff is no different than any mechanical product – it may occasionally function in a way other than intended, particularly when it is misused, not properly maintained, or when component parts fail due to age, wear or abuse.").

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

C.A. No. 9:10–cv–1254 (MAD/RFT), 2012 WL 2178931, at *1-2 (N.D.N.Y. May 15, 2012).

## IV.  ARGUMENT

### A. Overview of New York Product Liability Law

Under New York law, a plaintiff seeking to recover damages for injuries caused by an allegedly defective product may proceed under one of four legal theories:  strict liability, negligence, or breach of express or implied warranty.  *Wick v. Wabash Holding Corp.,* 801 F.Supp.2d 93, 101 (W.D.N.Y. 2011) (*citing Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 207 (N.Y. 1983)).  Importantly, there is a " 'high degree of overlap between the substantive aspects'" of these liability theories. *Id.* (*quoting Denny v. Ford Motor Corp.,* 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 734 (N.Y. 1995)).  Indeed, "whether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that":

1.    There was "a defect in the product";

2.    The defect "was a substantial factor in causing injury"; and

3.    *"[T]he defect complained of existed at the time the product left the manufacturer['s]" hands*.

*Pinello v. Andreas Stihl Ag & Co. KG*, No. 8:08–CV–00452 (LEK/RFT), 2011 WL 1302223, at

*10 (N.D.N.Y. Mar. 31, 2011) (*quoting Tardella v. RJR Nabisco,* 178 A.D.2d 737, 576 N.Y.S.2d

965 (N.Y.App. Div.3d Dep't 1991)) (emphasis added; internal quotations omitted).

      In this case, Plaintiff has not indicated which product liability theories he is pursuing.

Nevertheless, because Plaintiff is proceeding *pro se*, and his complaint is entitled to be

"interpret[ed] to raise the strongest arguments that [it] suggest[s],"[53] Smith & Wesson will

assume that he is proceeding under all four available theories of recovery.

### B.  The Reasons Why All of Plaintiff's Product Liability Claims Fail

      **1.  Because Plaintiff Cannot Point to A Specific Defect In This Lost Product, He Must Establish a Defect Through Circumstantial Evidence Alone. But Since Plaintiff Is Unable to Exclude Other, More Likely Causes For the Occurrence, He Cannot Rely on Circumstantial Evidence to Establish a Defect.**

      In this case, Plaintiff has not identified or alleged a specific defect in Smith & Wesson's

product.  Instead, he simply asserts that Smith & Wesson's Model 90 handcuffs are defective

because they failed to open on July 9, 2009. *See* Complaint, ¶ 26.  Therefore, in order to recover

on any of his product liability theories, Plaintiff must establish a defect through circumstantial

evidence.

      In *Ramos v. Howard Industries, Inc.*, the New York Court of Appeals outlined the legal

standard governing a plaintiff's burden of proof when he intends to establish a defect via

circumstantial evidence:

> It is well settled that a products liability cause of action may be proven by
> circumstantial evidence, and thus, a plaintiff need not identify a specific product
> defect.  "In order to proceed in the absence of evidence identifying a specific
> flaw, a plaintiff must prove that the product did not perform as intended and
> exclude all other causes for the product's failure that are not attributable to
> defendants."  If, however, a plaintiff is unable to prove both elements, "a jury may

---

[53] *See Burgos*, 14 F.3d at 790 (internal quotations and citation omitted).

> not infer that the harm was caused by a defective product unless plaintiff offers competent evidence identifying a specific flaw."

885 N.E.2d at 178 (citations omitted). In short, a plaintiff seeking to rely on circumstantial evidence alone to establish a product defect must satisfy two elements: (1) "that the product did not perform as intended," and (2) the plaintiff must also "exclude all other causes for the product's failure that are not attributable to defendants." *Maciarello v. Empire Comfort Sys.*, 16 A.D.3d 1009, 1011, 792 N.Y.S.2d 671 (N.Y.App. Div.3d Dep't 2005) (*citing Speller v. Sears, Roebuck & Co.,* 100 N.Y.2d 38790, 790 N.E.2d 252 (N.Y. 2003)).

Consequently, when a plaintiff is unable to exclude causes for an incident that are not attributable to a defect in the product, summary judgment must be granted in the manufacturer's favor. *See id.* Indeed, there are countless cases granting summary judgment where, as here, the plaintiff's proof fails to exclude alternative causes. *See, e.g., Gilks v. Olay Co., Inc.,* 30 F.Supp.2d 438, 443 (S.D.N.Y. 1998) (collecting cases). One such case, involving facts substantially similar to those at bar, is the Southern District of New York's decision in *Gilks*.

In *Gilks*, the plaintiff filed product liability claims against the defendant after allegedly sustaining facial injuries and scarring while using defendant's Oil of Olay Moisture Replenishing Cream. *Id.* at 439-40. Because plaintiff discarded the product before filing suit, she was unable to corroborate her defect claims through testing or inspection. *Id.* at 444. Moreover, plaintiff failed to present any expert testimony to support the defect and causation elements of her claims. *Id.* Since plaintiff had no evidence of a specific defect in the product, she was required to prove her case circumstantially. *Id.* at 443.

The *Gilks* Court begin its explication of the controlling legal standard by affirming that, in order to prove a defect circumstantially, "plaintiff's proof [must] exclude[] the possibility of other causes." *Id.* Judge Chin further emphasized that "[m]ere use of the product and

12

subsequent injury, however, are not a sufficient basis from which to infer causation." *Id.* In applying this standard to the facts at bar, the Court initially found that defendant had presented evidence of other possible causes for plaintiff's injuries, including "mild sun poisoning." *Id.* at 444. Because plaintiff failed to present "any evidence to the effect that her injuries could not have been the result of" defendant's proposed alternative causes, the Court dismissed plaintiff's product liability claims at summary judgment. *Id.* at 445-46.

In this case, Plaintiff similarly failed to inspect or test Smith & Wesson's product before its destruction, and he therefore has no direct evidence to corroborate his nebulous claim of a defect in the Model 90 handcuffs. *See* Section II(C.) of this Memorandum, *supra.* Plaintiff likewise has no expert who can opine on the issues of defect or causation. *Id.* Thus, just as was the case for the plaintiff in *Gilks*, Plaintiff must establish a defect through circumstantial evidence.

To meet his burden, Plaintiff must exclude alternative causes for the failure of the handcuffs to open on July 9, 2009. He cannot do so. For instance, Plaintiff cannot out rule out the possibility that the left cuff would not open on July 9, 2009 because corrections officials did not use the correct key to open the handcuffs. *See* Section II(D.) of this Memorandum, *supra.* Additionally, Plaintiff cannot rule out the possibility that, at some point during the 33 to 57 year life of this set of handcuffs, the locking mechanism was damaged as a result of misuse or improper maintenance. *Id.* Indeed, because the handcuffs have been discarded, it is impossible to exclude damage to the locking mechanism as the reason for the left cuff's failure to open. *Id.* Summary judgment is proper.

The facts present in the Court of Appeals' Decision in *Ramos*, where the Court reversed the lower courts' decision denying summary judgment in favor of the defendant, are likewise

analogous to the case at bar – though it bears mention that the plaintiff's evidence in *Ramos* was actually much stronger than Plaintiff's virtually non-existent evidence in this case. In *Ramos*, plaintiff filed product liability claims against defendant after he sustained injuries in an accident that occurred when the defendant's transformer exploded. 885 N.E.2d at 177. The *Ramos* plaintiff also sought to prove his defect claims through circumstantial evidence only. *Id.* at 179.

The defendant moved for summary judgment. *Id.* Though the defendant was unable to examine the transformer because it was lost, it nevertheless submitted an expert affidavit (1) stating that the subject transformer was not defective because, *inter alia*, the defendant's transformers are "designed and manufactured under state of the art conditions" and (2) "posit[ing] other possible causes [for the] explosion that may have been introduced . . . after it left defendant's possession," including negligent re-wiring of the transformer by plaintiff's employer. *Id.* In opposing defendant's summary judgment motion, plaintiff responded with his own expert affidavit; however, plaintiff's expert failed to exclude the alternative possibilities raised by defendant. *Id.* As such, the Court held that the plaintiff's evidence failed to "exclud[e] all other causes for the transformer's malfunction not attributable to defendant such that a reasonable jury could find that the transformer was defective in the absence of evidence of a specific defect." *Id.* The Court accordingly reversed the decisions of the lower courts, and ordered that summary judgment be entered in the manufacturer's favor. *Id.*

Similar to the defendant in *Ramos*, Smith & Wesson has submitted evidence in this case establishing that the handcuffs did not contain a defect. For instance, Smith & Wesson submitted evidence establishing "that the handcuff was state-of-the-art when produced between 1955 and 1979 . . . ." *See* Smith & Wesson's Responses to Plaintiff's Requests for Admissions, Request #4. Additionally, Model 90 handcuffs were never subject to a recall. *See* Smith &

Wesson's Answer to Plaintiff's Interrogatory #20.  Furthermore, the record evidence establishes that the specific set of handcuffs at issue in this case is between 33 and 57 years old.  *See* Smith & Wesson's Answer to Plaintiff's Interrogatory #29.  Throughout its 33 to 57 year life, there is absolutely no evidence that the handcuffs had ever malfunctioned in the past.  *See* the State Defendants' Answer to Smith & Wesson Interrogatory #12.  As such, the available evidence establishes that this particular pair of handcuffs was not defective.  *See* Belin Affidavit, ¶ 9.

Moreover – and as noted in greater detail above – Smith & Wesson has posited two alternative explanations, unrelated to any product defect, for the failure of the left cuff to unlock on July 9, 2008:  (1) corrections officers used the wrong key to open the cuffs and (2) the locking mechanism may have been damaged by misuse or improper maintenance.  Plaintiff's proof cannot exclude either of these alternative causes.  Smith & Wesson is entitled to final summary judgment on all claims.

### 2. Moreover, Plaintiff's Failure to Come Forward With Competent Expert Testimony To Support His Claim of a Defect in this Complex Mechanical Product Is Sufficient Reason Alone to Grant Summary Judgment in Smith & Wesson's Favor.

Under New York product liability law, competent expert testimony is typically required to establish a defect in cases involving complex mechanical products.  The Northern District of New York's recent decision in *Pinello v. Andreas Stihl Ag & Co. KG* illustrates this principle.  2011 WL 1302223.  In *Pinello*, plaintiff filed product liability claims against the defendant after allegedly sustaining injuries while using defendant's hand-held cutoff machine.[54]  *Id.* at *1.  In particular, plaintiff alleged that defendant's product was defective in manufacture, design, and warnings.  *Id.*  Plaintiff intended to offer an expert to opine that the cutoff machine was

---

[54] The product at issue in *Pinello* was a STIHL TS 400, which "is a hand-held, gasoline-powered tool that uses either an abrasive composite or abrasive diamond wheel to grind through certain types of materials, including asphalt, concrete and other masonry materials and various metals." *See id.,* at *1.

defective, but the trial court struck plaintiff's expert because his proposed opinion testimony failed to comply with the tests forth in *Daubert v. Merrell Dow. Pharmaceuticals.*[55]  *Id.* at \*6-\*9. The *Pinello* Court further held that, without expert testimony, plaintiff could not show that the cutoff machine was defective.  *Id.* at \*10.  The Court therefore granted summary judgment in defendant's favor.  *Id.*

En route to granting summary judgment, Judge Kahn emphasized that "[i]t is a fundamental principle under New York law that a plaintiff must present evidence of a product defect to prevail in a product liability suit under any theory of liability."  *Id.*  In order for a plaintiff to meet this burden, he "must present expert testimony, and where a plaintiff's expert's opinion and testimony in a product liability action is precluded, plaintiff's liability theories are no longer viable and summary judgment is appropriate." *Id.* (citation omitted).

The holding in *Pinello* is commonly applied in product liability cases, such as the case at bar, that involve complex mechanical products.  Indeed, courts applying New York law have granted summary judgment in favor of the manufacturer of numerous products in cases where a plaintiff failed to present competent expert testimony to support his defect claims, including cases involving products as diverse as a printing press; a boat motor; and an awning.  *See Quintanilla v. Komori Am. Corp.,* No. CV 04-5227(ETB), 2007 WL 1309539, at \*7 (E.D.N.Y. May 4, 2007), *aff'd*, No. 07–2375-CV, 2009 WL 320186 (2d Cir. Feb. 10, 2009) (granting summary judgment in favor of the defendant because, after the plaintiff's expert was precluded, plaintiff was left with no competent evidence of a defect in defendant's printing press); *Brooks v. Outboard*, 234 F.3d 89, 92 (2d Cir. 2000) (affirming summary judgment in favor of the defendant because, without expert testimony, plaintiff could offer no evidence that the defendant's boat motor was defective); and *Russo v. JIL Industr.*, No. 1:04–CV–1179, 2006 WL

---

[55] 509 U.S. 579, 597 (1993).

5278223, at *1 and *6 (N.D.N.Y. Nov. 20, 2006) (in a case involving allegations of a defective awning, the court struck plaintiff's expert before proceeding to grant summary judgment in the defendant's favor because the stricken expert's testimony was "central" to plaintiff's product liability claims).

Here, Plaintiff has no expert testimony to support his claim of a defect in the handcuffs' locking mechanism. On the contrary, the only evidence that Plaintiff can point to in support of his defect claims is that he was allegedly injured as he was being restrained with Smith & Wesson manufactured handcuffs. That's not enough; summary judgment is proper. *See, e.g., Quintanilla,* 2007 WL 1309539, at *7 (granting summary judgment in defendant's favor because, without expert testimony, "plaintiff 'had no evidence to support his claim[s] that amount[ed] to [any]thing more than that he was injured' while using a printing press manufactured by defendant") (citation omitted).

### 3. Finally, Plaintiff's Product Liability Claims Also Fail Because He Cannot Establish That the Handcuffs Were Being Used In Accordance With Their Intended Use.

To recover on his product liability claims, Plaintiff must establish that the handcuffs were being used as intended. *Denny,* 662 N.E.2d at 732 (noting the requirement that a product liability plaintiff seeking to recover under strict liability and implied warranty theories must prove that, at the time of the incident, the product was being used as intended or in a reasonably foreseeable manner). In order for handcuffs to be used properly and as intended, "appropriate application techniques [must] be employed by law enforcement officials." *See* Smith & Wesson's Response to Plaintiff's Request to Admit #4.

Related to this point, the Model 90 "was designed with a secondary lock that prevents over-tightening" when the lock is "positively and properly engaged . . . ." *See* Smith &

Wesson's Response to Plaintiff's Requests for Admission #1 and #4.  In this case, Corrections Officer Burch – the individual who placed Plaintiff in handcuffs on July 9, 2009 – has acknowledged that he did not apply the secondary lock in order to prevent the cuffs from over-tightening.  *See* Corrections Officer Burch's Answer to Plaintiff's Interrogatory #20.  Therefore, the undisputed evidence establishes that the handcuffs were not applied as intended.  This presents an independent reason for granting summary judgment in Smith & Wesson's favor.  *See Denny*, 662 N.E.2d at 732.

**C.** **Additional Reasons Why Plaintiff's Strict Products Liability and Negligence Claims Fail**

A plaintiff in a strict products liability action must show that "(1) a defective product (2) caused plaintiff's injury." *Colon v. BIC USA, Inc.*, 199 F.Supp.2d 53, 82 (S.D.N.Y. 2001) (*citing McCarthy v. Olin Corp.,* 119 F.3d 148, 154 (2d Cir.1997)).  Similarly, to recover on a product liability claim based in negligence, a plaintiff must show "(1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) a breach of that duty by failure to use reasonable care so that a product is rendered defective, *i.e.* reasonably certain to be dangerous; (3) that the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage." *Id.* (*citing McCarthy,* 119 F.3d at 156).  Whether a plaintiff's claim is based in strict liability or negligence, New York recognizes three categories of product defects:  (1) manufacturing defects; (2) design defects; and (3) warning defects.  *Id.* at 83 (*citing McCarthy,* 119 F.3d at 154).

Under New York law and the facts of this case, the evaluation of Plaintiff's strict liability and negligence claims involves virtually the same analysis because, under either theory, Plaintiff must make the predicate showing of a defect in Smith & Wesson's product in order to recover.  *See, e.g., Colon*, 199 F.Supp.2d at 85 (explaining that, "[t]o plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit

was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction'"); *id.* at 83 (noting that, "for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical"); and *id.* at 84 (recognizing that "[f]ailure to warn claims are identical under strict liability and negligence theories of recovery") (citations omitted).    Therefore, Plaintiff's strict liability and negligence claims in this case will be analyzed together.

### 1.   There is No Manufacturing Defect

"To plead and prove a manufacturing flaw . . . , the plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction' . . . .    In other words, a manufacturing flaw exists when the unit in question deviates in quality . . . from all of the other identical units."   *Id.* at 85 (citations omitted).   In this case, Plaintiff never pleaded a manufacturing flaw.   *See* Complaint, ¶ 26.    Furthermore, he obviously cannot prove a manufacturing flaw because the handcuffs were discarded, and Plaintiff has absolutely no proof that the subject cuffs "deviate[d] in quality . . . from all of the other identical units."   *See id.* Summary judgment on Plaintiff's manufacturing defect claim is proper.   *See, e.g., Preston v. Peter Luger Enterp., Inc.,* 51 A.D.3d 1322, 1325, 858 N.Y.S.2d 828 (N.Y.App. Div.3d Dep't 2008) (granting summary judgment in favor of a glass steak sauce bottle manufacturer on plaintiff's manufacturing defect claim because plaintiff's expert was unable to identify a material manufacturing flaw in the bottle).

### 2.   There is No Design Defect

To show a design defect, "[t]he plaintiff bears the burden of establishing 'that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was

feasible to design the product in a safer manner.'" *Morritt v. Stryker Corp.*, No. 07–CV–2319 (RRM)(RER), 2011 WL 3876960, at *4 (E.D.N.Y. Sept. 1, 2011) (*quoting Voss, supra*) (emphasis added in *Morritt* retained). Indeed, " 'proof of a feasible alternative design [is] a prerequisite to establish[ing] a prima facie design defect claim under New York law.'" *Id.* (*quoting Liz v. Zinsser & Co.,* 253 A.D.2d 413, 414, 676 N.Y.S.2d 619 (App.Div.1998)). Here, Plaintiff never pleaded, nor offered any proof of, an alternative handcuffs design. *See* Complaint, ¶ 26. Summary judgment on Plaintiff's design defect claim is proper. *See id.* at *5, *8 (granting summary judgment on plaintiffs' design defect claim because they "produced no evidence during discovery that it was feasible to design the [defendant's product] in a safer manner.").

### 3.  There is No Warning Defect

To recover on a defective warning claim, a plaintiff must "establish that a manufacturer failed to provide adequate warnings regarding the use of a product and that this failure was the proximate cause of his injury." *Cuntan v. Hitachi KOKI USA, Ltd.,* No. 06–CV–3898 (RRM)(CLP), 2009 WL 3334364, at *11 (E.D.N.Y. Oct. 15, 2009) (*citing Voss, supra*).  In this case, Plaintiff claims that Smith & Wesson failed to provide a warning regarding the potential of the Model 90 handcuffs to malfunction because they are defective. *See* Complaint, ¶ 26.  There are several problems with this claim.  First of all, Plaintiff's failure-to-warn claim is based on the false premise that he can prove that the subject handcuffs did in fact malfunction on the incident date – he cannot, for the reasons detailed above.  Therefore, Plaintiff's failure-to-warn claim lacks a factual foundation.

Moreover, Plaintiff's proof indisputably fails on the causation element.  This is so because Plaintiff has not identified the warning that he believes should have been provided.  It

therefore follows that Plaintiff can never establish that the corrections officials who applied the handcuffs on Plaintiff would have acted differently if they'd been supplied with the never-identified different warning. *Cuntan,* 2009 WL 3334364, at *17 (granting summary judgment in favor of a power saw manufacturer because plaintiff failed to satisfy the causation element; in doing so, the Court found that "even if [it] were to credit the plaintiff's assertion that a differently presented warning would have altered his behavior or prevented his injury, he has failed to offer any alternatives for the jury to consider.").

Additionally, Plaintiff has failed to establish that the corrections officials who applied the handcuffs read the existing Smith & Wesson handcuff warnings. As such, Plaintiff cannot prove that any additional warning would have been read and heeded by the corrections officials. *See, e.g., Sosna v. American Home Prod.*, 298 A.D.2d 158, 748 N.Y.S.2d 548 (N.Y.App. Div.1st Dep't 2002) (affirming the entry of summary judgment in the manufacturer's favor on plaintiff's defective warning claim because plaintiff failed to establish the proximate cause element; in reaching this conclusion, the Court reasoned that because plaintiff testified that he did not read the existing product warnings, he could not prove that he "would have read and heeded a[n adequate] warning had one been given.") (citations omitted). In sum, Plaintiff's warning claim fails for lack of causation.

### D. Additional Reasons Why Plaintiff's Implied Warranty Claim Fails

The "implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used." *Lewis v. White,* No. 08 Civ. 7480(SCR)(GAY), 2010 WL 6465230, at *5 (S.D.N.Y. July 1, 2010) (internal quotation marks and citation omitted). To recover on a breach of implied warranty theory, a plaintiff must prove: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the

manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident." *Id.* (citation omitted).

As noted by the Court of Appeals in *Denny v. Ford Motor Co.*, "[a]s a practical matter, the distinction between the defect concepts in [strict liability and] implied warranty theory may have little or no effect in most cases." 662 N.E.2d at 738. Indeed, the doctrines will diverge only "when the 'ordinary purpose' for which the product was sold and marketed is not the same as the purpose that provides the utility that outweighs the risk of injury." *Gonzalez v. Morflo Indus., Inc.,* 931 F.Supp. 159, 167 (E.D.N.Y. 1996). This is so because a design defect that is not actionable in strict liability may nevertheless support a viable breach of warranty claim. *Id.* "That is, the factfinder could . . . conclude that a product's utility outweighs the risk of injury," and that, therefore, there is no cause of action in strict liability, but also simultaneously conclude that a defendant is liable for breach of warranty because "the product was not safe for the 'ordinary purpose' for which it was marketed and sold." *Id.* (*citing Denny,* 662 N.E.2d at 735, which held "jury could rationally find that Ford Bronco's utility as an off-road vehicle outweighed the risk of injury resulting from rollover accidents, while also finding that the vehicle was not safe for the 'ordinary purpose' of daily driving for which it was marketed and sold.").

In the context of this case, however, the fine distinction between strict liability and implied warranty theories is merely academic, because the "ordinary purpose" for which Smith & Wesson handcuffs are sold – to provide law enforcement with an effective means of restraint – is the same purpose that provides their utility – again, to provide law enforcement with an effective restraint. Thus, since Plaintiff's strict products liability claims fail as a matter of law, his implied warranty claim falls with it. *See, e.g., id.* (concluding that, since plaintiff's strict

liability claim failed for failure to establish a design defect, his implied warranty claim fell with it, because there was no distinction between the ordinary purpose for which defendant's water heater was sold and the purpose that gave it its utility). Finally – and more fundamentally – Plaintiff's breach of implied warranty claim must also fail for the simple reason that, in this case, Plaintiff's proof fails to establish that a defect in Smith & Wesson's handcuffs caused the failure of the left cuff to unlock; as such, Plaintiff cannot establish that the handcuffs were unfit "for the ordinary purpose for which [they were] to be used." *See Lewis,* 2010 WL 6465230, at *5 (dismissing plaintiff's breach of implied warranty claim because he failed to plead facts that would support a valid defect claim).

### E.  Additional Reasons Why Plaintiff's Express Warranty Claim Fails

"An express warranty is an 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'" *Horowitz v. Stryker Corp.,* 613 F.Supp.2d 271, 286 (E.D.N.Y. 2009) (*citing* N.Y. U.C.C. § 2-313(1)(a)). "Under New York law, an action for breach of express warranty requires both the existence of an express promise or representation and reliance on that promise or representation." *Id.* (citation omitted). Thus, to recover on a breach of express warranty claim, a plaintiff must (1) identify the express warranty and (2) establish that he relied upon the warranty when using the defendant's product. *Wick,* 801 F.Supp.2d at 108. Here, Plaintiff never pleaded, or offered any proof of, any promise or representation made by Smith & Wesson relating to the handcuffs. *See* Complaint, ¶ 26. He likewise failed to establish that he relied on any promise or representation made by Smith & Wesson. As such, Plaintiff's express warranty claim must likewise be dismissed. *See, e.g., id.* at

108 (dismissing plaintiff's express warranty claim at summary judgment because plaintiff failed to identify "any express warranty on which [he] relied in using the" defendant's product).[56]

## V. CONCLUSION

WHEREFORE, Smith & Wesson requests that this Court grant its Motion for Final Summary Judgment on all claims.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

*s/ Clem C. Trischler*
Clem C. Trischler
*Pro Hac Vice* Admission
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: 412-263-2000
Facsimile: 412-263-2001
E-Mail: cct@pietragallo.com

*Counsel for Defendant, Smith & Wesson Corp.*

---

[56] Though unnecessary, it also bears mention that the undisputed evidence establishes that the warranty expired. *See* the State Defendant's Answers to Smith & Wesson's Interrogatories, Ex. A, which is attached to the Attorney Affidavit as Exhibit "I" to this Motion (note that this document is a letter from Smith & Wesson informing the State Defendants that the subject handcuffs could not be repaired because they are in excess of 25 years old and no longer covered by warranty).

## CERTIFICATE OF SERVICE

The undersigned certifies that Smith & Wesson's Notice of Motion for Summary Judgment; Memorandum of Law in Support of Motion for Summary Judgment; Affidavit of Clem C. Trischler in Support of Motion for Summary Judgment; Statement of Materials Facts in Support of Motion for Summary Judgment; and Notification to the *pro se* Plaintiff of the Consequences of Failing to Respond to Smith & Wesson Corp.'s Summary Judgment Motion, are being served upon the Plaintiff by U.S. first class mail-postage prepaid, at the following address and that all other parties are receiving the same by ECF notification of the filing on this 15th day of February, 2013.

Ronald Hayes
#02-A-4085
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902-0500

s/ *Clem C. Trischler*