**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**RONALD HAYES**,

                                    Plaintiff,

            - v -                                              Civ. No. 9:10-CV-1201
                                                                        (DNH/RFT)

**THE STATE OF NEW YORK, D.O.C.S**,
**C.O. BURCH**, *Great Meadow Correctional Facility*,
**C.O. WRIGHT**, *Great Meadow Correctional Facility,*
**C.O. JONES**, *Great Meadow Correctional Facility,*
**SMITH & WESSON**, **THE STATE OF NEW YORK**,

                                    Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

**RONALD HAYES**
02-A-4085
Plaintiff, *Pro Se*
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**HON. ERIC T. SCHNEIDERMAN**              **KEITH A. MUSE, ESQ.**
Attorney General of the State of New York      Assistant Attorney General
Attorney for State Defendants
The Capitol
Albany, NY 12224

**PIETRAGALLO, GORDON LAW FIRM**           **CLEM C. TRISCHLER, ESQ.**
Attorney for Defendant Smith & Wesson
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

**STRONGIN, ROTHMAN LAW FIRM**             **HOWARD F. STRONGIN, ESQ.**
Attorney for Defendant Smith & Wesson
5 Hanover Square, 4th Floor
New York, NY 10004

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Ronald Hayes brings this action, pursuant to 42 U.S.C. § 1983 and New York State's products liability laws, alleging that (1) Defendants Wright, Burch, Jones, and the State of New York's Department of Corrections and Community Supervision ("DOCCS") (hereinafter collectively "State Defendants") used excessive force against him, and (2) that he was injured by a pair of defective handcuffs manufactured by Defendant Smith & Wesson ("S&W"). *See generally* Dkt. No. 1, Compl; *see also* Dkt. No. 36, Mem. Dec. & Order, dated Oct. 27, 2011, at pp. 10–11. The State Defendants and S&W have each separately moved for Summary Judgment. Dkt. Nos. 85 & 86. Plaintiff opposes both Motions. Dkt. Nos. 91 & 92.[1] For the reasons that follow we recommend that State Defendants' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part, and that S&W's Motion for Summary Judgment be **GRANTED.**

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

---

[1] Both S&W and State Defendants have requested that their versions of the facts, as submitted in their respective Statements of Material Fact Pursuant to Local Rule 7.1, be accepted as true because Plaintiff failed to strictly adhere to the format prescribed by Local Rule 7.1 when replying to their 7.1 Statements. *See* Dkt. Nos. 93, S&W's Reply, at pp. 3–8, & 95, State Defs.' Reply, at pp. 2–3. However, based on Plaintiff's *pro se* status, the fact that he was attempting to reply to two thorough Summary Judgment Motions, and the fact that we were able to decipher Plaintiff's arguments as written, we decline their invitations.

accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Background

In large measure the parties dispute the events of July 9, 2009. What follows is a summary of the facts and the relevant disputes gathered from the parties' submissions.

On June 9, 2009, Plaintiff, then an inmate at Great Meadow Correctional Facility ("GMCF"), was standing near a phone in GMCF's recreation yard when multiple fights broke out in the yard. Dkt. No. 86-11, State Defs.' Statement of Material Fact Pursuant to Local Rule 7.1 (hereinafter "State Defs.' 7.1 Statement"), at ¶¶ 1–3 & 5; Dkt. No. 86-4, Ronald Hayes Dep., dated Sep 10, 2012, at pp. 23–25. At least one verbal command to "get down" was broadcast from towers around the yard, and despite those warnings, Plaintiff remained standing. State Defs.' 7.1 Statement at ¶¶ 3 & 4; Hayes Dep. at p. 29.

Thereafter, Defendant Correction Officer ("CO") Burch entered the yard. State Defs.' 7.1 Statement at ¶ 5. According to the State Defendants' version of events, when Defendant Burch entered the yard, Plaintiff was standing and using the phone. *Id.* at ¶¶ 5–6. Plaintiff maintains that he "absolutely" was not on the phone when Defendant Burch approached him. Hayes Dep. at p. 25. As outlined below, it is nonetheless undisputed that CO Burch used force against Plaintiff to bring him to the ground, however, State Defendants and Plaintiff disagree as to the amount and type of

force used.

According to State Defendants, CO Burch ordered Plaintiff to "put the phone down" and "lay face down on the ground" several times to no avail. State Defs.' 7.1 Statement at ¶ 6. And, because Plaintiff failed to comply with his orders, CO Burch "placed his right hand on [Plaintiff's] left shoulder and left hand on plaintiff's right shoulder and then pulled [Plaintiff] toward him," then "us[ing] downward pressure [pushed Plaintiff] face first to the ground," and "once on the ground [he] grabbed [Plaintiff's] wrists, pulled them behind his back and applied a set of handcuffs." According to Defendant Burch, once Plaintiff was handcuffed, "no further force was necessary." *Id.* at ¶¶ 7–9; Dkt. No. 86-7, Jeremy Burch Decl., dated Feb. 14, 2013, at ¶¶ 6, 8, 10, & Ex. 1, Rep., dated July 9, 2009; Dkt. No. 86-5, Certified Copy of Unusual Incident Rep. (hereinafter "Incident Rep."), at p. 000016.

Contrariwise, Plaintiff claims that CO Burch commanded him to get down while he simultaneously grabbed the hood of Plaintiff's sweatshirt and threw him face first onto the ground without first giving him an adequate opportunity to comply with his order. After bringing Plaintiff down to the ground, Defendant Burch "aggressively" handcuffed Plaintiff behind his back. Hayes Dep. at pp. 29–30 & 32. Plaintiff complained multiple times to CO Burch that the handcuffs were too tight and were hurting him. *Id.* at p. 33. CO Burch responded by telling Plaintiff "I'll show you tight 'Nigger,'" and further tightened Plaintiff's handcuffs. Compl. at ¶¶ 7–9. Thereafter, Plaintiff was escorted to the infirmary by Defendant CO Jones. *Id.* at ¶ 12; State Defs.' 7.1 Statement at ¶ 11.

According to Plaintiff, once at the infirmary, Defendants CO Jones and CO Wright, as well as several other unidentified officers, spent the next three to four hours attempting to remove

Plaintiff's handcuffs. Hayes Dep. at pp. 53–55. Defendants do not deny that they attempted to remove Plaintiff's restraints at the facility. In fact, an unusual incident report describing the events confirms that "[PLAINTIFF] WAS ESCORTED TO FACILITY MEDICAL WHERE HIS RIGHT HANDCUFF GM # 155 MALFUNCTIONED AND WOULD NOT UNLOCK. BOLT CUTTERS WERE UTILIZED IN AN ATTEMPT TO REMOVE THE CUFFS." Incident Rep. at p. 000003. Plaintiff claims that Defendant CO Wright, who was wearing his name tag at the time, participated in these attempts. Hayes Dep. at p. 54. State Defendants maintain that Thursday was one of CO Wright's regular days off, and accordingly, CO Wright was neither on duty nor at GMCF on Thursday, July 9, 2009. State Defs.' 7.1 Statement at ¶ 17; Dkt. No. 86-8, Reginald Wright Decl., dated Feb. 15, 2013, at ¶¶ 6–11, & Ex. 1, Time Card, dated July 2–July 15, 2009.

According to Plaintiff, Defendants Wright and Jones, as well as other non-defendants utilized multiple implements besides bolt cutters to try and remove the handcuffs, including "all kinds" of handcuff keys. Hayes Dep. at pp. 51–52 & 107–11. Within an hour, Defendants were able to release the right cuff using a handcuff key, however, Plaintiff's left cuff would not release. *Id.* at pp. 49 & 111. Plaintiff "kept telling [Jones] it was hurting, . . . and [] asking him to stop because it was evident that they didn't know what they were doing." *Id.* at pp. 53–54. At some point, Defendants cut through part of the Plaintiff's left cuff, however, rather than releasing it, the cuff "enlarged in Plaintiff's flesh" cutting his wrist and causing him to bleed. *Id.* at pp. 52–53. Eventually, Defendants called in the facility's "locksmith," who told Defendants that they "did it the wrong way" and that they should take Plaintiff to the hospital. *Id.* at pp. 56–57. Plaintiff was then transported to Glens Falls Hospital where the left cuff was finally removed. *Id.* at p. 56; State Defs.' 7.1 Statement at ¶ 14; Incident Rep. at p. 000003.

The parties also dispute the nature and extent of Plaintiff's injuries. According to State Defendants "[a]t no point in time did inmate Hayes complain of numbness to his arms or hands," and the only injury noted by the medical staff at Glens Falls Hospital after the cuffs were removed "was a small abrasion to inmate Hayes' left wrist." State Defs.' 7.1 Statement at ¶¶ 15 & 16. Plaintiff claims that his wrist was cut and bleeding and that he "suffered bruising and scars to wrist, face, and knees. Pain in arms and shoulders. Pain, swelling redness[,] numbness[,] elevated blood pressure and emotional [distress]" and was later diagnosed with some nerve damage and Carpal Tunnel Syndrome ("CTS") in both hands. Hayes Dep. at pp. 52–53 & 124–25; Compl. at ¶¶ 18 & 20.

The actual pair of S&W Model 90 handcuffs worn by Plaintiff on July 9, 2009, were destroyed prior to commencement of this lawsuit. Dkt. No. 85-1, S&W's Statement of Material Fact Pursuant to Local Rule 7.1 (hereinafter "S&W's 7.1 Statement"), at ¶¶ 27 & 32.

## B. § 1983 Claims & Defenses

In pertinent part, Plaintiff complains that (1) Defendant Burch used excessive force against him when he threw Plaintiff face first into the ground and purposefully overtightened his cuffs, and (2) Defendants Jones and Wright inflicted unnecessary pain on Plaintiff while attempting, and failing, to remove Plaintiff's cuffs, despite Plaintiff's repeated pleas that they stop.[2] Compl. at ¶¶ 23–25. State Defendants move for Summary Judgment on the grounds that (1) CO Burch used the appropriate amount of force under the circumstances, and in any event is entitled to qualified immunity, (2) Plaintiff cannot state an excessive force claim because his injuries were *de minimus*,

---

[2] Plaintiff has also alleged that Defendant Jones used excessive force against him after he was handcuffed by Defendant Burch and before the attempt to remove his handcuffs. *See* Compl. at ¶ 10. However, the State Defendants neither discussed these allegations, nor moved to dismiss this claim against Defendant Jones. *See generally* Defs.' Mem. of Law. Therefore, we need not, and do not, discuss these allegations against Defendant Jones.

(3) Plaintiff cannot prove that any State Defendant used excessive force against any him because he fails to specifically prove his claimed injury, or provide expert medical testimony causally connecting his alleged injuries to the conduct of any State Defendant, and (4) Defendant Wright was not at GMCF on July 9, 2009, and therefore was not personally involved in any alleged unconstitutional act. *See generally* Dkt. No. 86-9, State Defs.' Mem. of Law. State Defendants have not moved to dismiss Defendant Jones except insofar as they have offered defenses that would exculpate all Defendants generally, such as their claims that Plaintiff suffered only *de minimus* injury and that Plaintiff cannot proceed without first producing an expert witness. *See generally id.*

### 1. Excessive Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252,

262-63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eighth Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d 27, 29-30 n.1 (2d Cir. 1994) (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7).

Here, through affidavits, depositions, and prison reports the parties have woven two materially divergent accounts of the events of July 9, 2009. State Defendants argue that CO Burch encountered Plaintiff during "near riotous" conditions, and that the amount of force he used was appropriate in light of Plaintiff's failure to obey his orders. State Defs.' Mem. of Law at p. 7; Burch Decl. at ¶ 6 & Ex. 1. Plaintiff claims that he was not involved in any of the unrest in the yard and that Defendant CO Burch threw him face first onto the ground and aggressively handcuffed him before he even had a chance to comply with his orders, and that when he complained the handcuffs were too tight Defendant Burch stated "I'll show you tight Nigger[,]" and tightened his cuffs even further causing Plaintiff to "scream[] in excruciating agony and pain." Compl. at ¶¶ 6–9; Hayes Dep. at pp. 29–32. The latter part being a particularly troubling accusation in light of Defendant Burch's admission that after the handcuffs were applied, "no further force was necessary" to control Plaintiff. Burch Decl. at Ex. 1. These conflicting accounts clearly highlight the existence of genuine issues of material fact. Significantly, given the discrepancies in the parties' accounts, reasonable jurors could certainly disagree as to how much force was used, whether such force was necessary or justified under the circumstances, and therefore, also whether Defendant Burch acted with malicious intent to harm Plaintiff. *See Scott v. Coughlin*, 344 F.3d at 291. Such material issues of fact cannot be decided by this Court and instead must be presented to a trier of fact for final adjudication. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998); *see also Scott v. Coughlin*, 344 F.3d at 289.

Likewise, we find equally unavailing the State Defendants' arguments that Plaintiff cannot establish the objective element of an excessive force claim against Defendant Burch because his

injuries were *de minimus*. *See* State Defs.' Mem. of Law at pp. 8–9. It is clear from the record that genuine issues of material fact exist regarding the extent and seriousness of Plaintiff's injuries. According to medical records provided by State Defendants, after the incident, Plaintiff complained of some swelling and pain in his jaw, but other than old scars the only noticeable injury was a "small abrasion," on Plaintiff's left wrist. Dkt. No. 86-5, at pp. 000017–19. Plaintiff claims that his wrist was cut and bleeding and that he "suffered bruising and scars to wrist, face, and knees. Pain in arms and shoulders. Pain, swelling redness[,] numbness[,] elevated blood pressure and emotional [distress]," and was subsequently diagnosed with nerve damage and CTS in both hands. Hayes Dep. at pp. 52–53 & 124–25; Compl. at ¶¶ 18 & 20. Moreover, Plaintiff has submitted medical records indicating that more than a month after the incident he was still complaining of numbness, tingling, and a weakened grip in his left hand. Dkt. No. 92, Pl.'s Resp. to S&W's 7.1 Statement, at p. 8,[3] Portion of Pl.'s Ambulatory Health Record, at entry dated Aug. 18, 2009. Also, although Plaintiff fails to provide documentary evidence of his CTS diagnosis, his claims are far from conclusory. Rather, Plaintiff gave the name, approximate date, and location of where he was diagnosed and treated for the condition. *See* Hayes Dep. at pp. 124–25. Moreover, although CTS is not noted in the medical record provided by State Defendants, those records do not conclusively rule out the possibility of subsequent diagnosis and/or treatment.

Therefore, because significant issues of material fact exist as to both the objective and subjective elements of Plaintiff's excessive force claim against Defendant Burch, we recommend that the State Defendants' Motion for Summary Judgment be **DENIED** on this ground.

---

[3] Plaintiff did not number nor designate the attachments to Dkt. No. 92 in any way. Therefore, we refer to the pagination automatically assigned by the Court's Electronic Case Management System.

*-11-*

## 2. Proof of Injury

State Defendants seek to extinguish Plaintiff's excessive force claim against all State Defendants due to Plaintiff's failure to (1) present sufficient evidence of his injuries, and (2) provide expert witness testimony causally connecting those alleged injuries to the actions of the State Defendants. State Defs.' Mem. of Law at pp. 10–11. As noted above, Plaintiff's claims of injury are far from conclusory, and at the present stage are sufficient to establish a question of fact regarding whether Plaintiff was indeed injured in the manner he alleges.

Moreover, a medical expert is not required to establish a causal connection between the injury suffered and a defendant's actions in an excessive force case where the injuries complained of "are within the jury's common experiences and observations." *Williams v. Raimo*, 2012 WL 4911722, at * 2–3 (N.D.N.Y. Oct. 15, 2012) (internal citations omitted); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (quoting *Salem v. United States Lines Co.,* 370 U.S. 31, 35 (1962)) ("It is well settled that expert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'").

In the instant case, it is clear that no medical expert is required to establish the causal connection between the cut on Plaintiff's wrist and the attempts to remove his handcuffs. Nor is one required in order to link the bruising, swelling, numbness, scars, or pain suffered by Plaintiff to the State Defendants' alleged acts of slamming Plaintiff face first onto the ground and overtightening his handcuffs. The causal connection between these injuries and the alleged actions of the State Defendants are well within the common experiences and observations of a jury. *See Williams v. Raimo*, 2012 WL 4911722, at * 2–3.

*-12-*

Moreover, we are equally unpersuaded by Defendants' argument that expert medical testimony is required in order to rule out the pre-existing injuries as the cause of Plaintiff's injuries in his left hand. While it is true that Plaintiff had suffered damage to his right arm prior to this incident,[4] there is no evidence that Plaintiff sustained any damage from pre-existing injuries to his left arm. Indeed, Plaintiff testified that "although I suffered some injury to my right hand, I never had, prior to this, suffered injury to my left hand. And since the injury[,] I have had problems with my left hand as well as my right hand, but problems that I never had with my left hand." Hayes Dep. at p. 126. Therefore, an expert medical witness is not required in order for a reasonable juror to find an injury to his left arm or to rule out Plaintiff's pre-existing injury in his right arm as the cause of the symptoms now affecting his right arm.

For these reasons, we recommend that State Defendants' Motion for Summary Judgment be **DENIED** on these grounds.

### 3. Qualified Immunity

State Defendants' next argue that Defendant Burch is entitled to qualified immunity. State Defs.' Mem. of Law at pp. 12–13. We disagree.

Qualified immunity is an affirmative defense that must be raised and proven by those seeking it's protection. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980), *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982), & *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir. 2012)). Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate

---

[4] Plaintiff sustained injuries to his right arm in 1990 when he was shot several times during a robbery, and in 1989 as a result of a stabbing. *See* Hayes Dep. at pp. 35–38, 72–73, & 118.

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818; *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). The doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law[.]" *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, courts conduct "a two-part inquiry, exercising flexibility in deciding which question to address first. We ask whether the plaintiff has adduced facts sufficient to make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *See Vasquez v. Klie*, 513 F. App'x 85, 86 (2d Cir. 2013) (internal citations and quotation marks omitted). To be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In determining whether an officials actions were reasonable in light of existing law, we do not consider "how courts or lawyers might have understood the state of the law at the time," but rather whether it would have been clear to a reasonable official that his conduct was unlawful under the circumstances. *Id.* (citing *Saucier v. Katz*, 533 U.S 194, 202 (2001)).

In the event that the first inquiry "turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct 'was not objectively unreasonable in light of existing law[,]'" courts are encouraged to consider the second inquiry first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 227 (2009) & quoting *Coollick v. Hughes*, 699 F.3d 211, 219–20 (2d Cir. 2012)).

Whenever possible courts are encouraged to dispose of the qualified immunity issue prior to discovery or trial. *See e.g., Mitchell v. Forstyth*, 472 U.S. 511, 526 (1985) (noting that qualified

immunity was designed not only to provide immunity from damages, but also to provide immunity from suit); *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) (citing cases for the proposition that "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed."). A defendant is entitled to summary judgment on qualified immunity grounds if the rights asserted by the plaintiff were not clearly established, or if even when construing all evidence and inferences in the plaintiff's favor, no reasonable jury could conclude that it was objectively unreasonable "for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citations omitted).

It is clear that a prisoner has a constitutionally protected right to be free of cruel and unusual punishment, including the use of excessive force. *See Robinson v. California*, 370 U.S. at 666-67. In the instant case we have found that genuine issues of material fact exist regarding the events of July 9, 2009. Specifically, it is unclear how much force Defendant Burch used, and whether that force was justified or necessary under the circumstances. *See supra* Part II.B.1. We cannot as a matter of law state at this stage whether a constitutional violation occurred. Given the fact that genuine issues of material fact exist regarding Defendant Burch's actions and state of mind during the alleged altercation with Plaintiff, it would be patently premature for this Court to conclude that, "no reasonable jury . . . could conclude that it was objectively unreasonable for [Defendant Burch] to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *See Lee v. Sandberg*, 136 F.3d at 102; *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 353-54 (N.D.N.Y. 2010) (denying summary judgment on qualified immunity grounds where there was an outstanding question of material fact regarding the malicious intent of the defendant).

Therefore, we recommend that the State Defendants' Motion for Summary Judgment as to Defendant Burch on qualified immunity grounds be **DENIED.**

### 4. *Personal Involvement*

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Thus, "a plaintiff must plead that each defendant, through their own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, the State Defendants argue that Defendant Wright could not have been personally involved in any constitutional violation alleged by Plaintiff because Defendant Wright was neither on duty nor at GMCF on Thursday, July 9, 2009. State Defs.' Mem. of Law at pp. 13–14; Dkt. No. 95, State Defs.' Reply at Point I. In support of their argument, State Defendants have produced evidence indicating that CO Wright ordinarily had Thursdays off, and accordingly was not on duty nor present at GMCF on Thursday, July 9, 2009. *See, e.g.,* Wright Decl. at ¶¶ 6–11 & Ex. 1; Dkt. No. 95-1, Kathy Hallenbeck Decl., dated Mar. 14, 2013, at ¶ 6. And, according to records kept by GMCF, only one person with the last name of Wright, or a name spelled similarly, worked at GMCF in 2009. Hallenbeck Decl. at ¶ 7. However, Plaintiff claims that he knew Defendant Wright was present that day because Defendant Wright was wearing a name tag while he was in the infirmary helping CO Jones attempt to remove Plaintiff's handcuffs. Hayes Dep. at p. 54. Given the weight we must accord to Plaintiff's statement, we find that there is a genuine issue of material fact regarding whether Defendant Wright participated in the attempts to remove Plaintiff's handcuffs at GMCF on July 9, 2009. *See Scott v. Coughlin*, 344 F.3d at 289. Therefore, we recommend that the

State Defendants' Motion for Summary Judgment be **DENIED** as to Defendant Wright.

### 5. *Eleventh Amendment Immunity*

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.

Here, Defendants seek dismissal of all claims against the State of New York and DOCCS, as well as any claims brought against Defendants Burch, Jones, and Wright in their official capacities.

To begin with, DOCCS is not a proper defendant in a § 1983 action. *See Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (state agency is not a "person" within meaning of § 1983 and, therefore, not subject to suit under that provision.) Moreover, the State of New York is not a "person" under § 1983, and therefore, Plaintiff cannot maintain a cause of action pursuant to § 1983 against the state. *Id.* ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983") (citing *Hafer v. Melo,* 502 U.S. 21, 26 (1991)). Accordingly, it is recommended that both the State of New York and DOCCS be **DISMISSED** from this action.

Additionally, although Plaintiff requested an injunction against DOCCS prohibiting him from being handcuffed from behind, Compl. at ¶ 27, he did not request any injunctive relief against the individual Defendants in their personal or official capacities. Therefore, because Plaintiff has requested only monetary relief against the remaining State Defendants, we further recommend that the State Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims against

the remaining State Defendants in their official capacities.

## C. Plaintiff's Product Liability Claims

Plaintiff alleges that (1) S&W breached an implied warranty because the handcuffs placed on Plaintiff on July 9, 2009, were unfit for the purpose for which they were intended, (2) the handcuffs were defectively manufactured or designed, and (3) S&W failed to adequately warn consumers about alleged significant risks posed by the product to which they were aware. *See* Compl. at ¶ 26.[5] S&W argues that they are entitled to summary judgment because, *inter alia*, Plaintiff has failed to meet his burden to provide either direct or circumstantial evidence that the handcuffs at issue were defective, or to sufficiently allege a cause of action based on failure to warn. Dkt. No. 85-23, S&W's Mem. of Law, at pp. 11–15 & 20–21. For the reasons that follow, we recommend that S&W's Motion for Summary Judgment be **GRANTED**.

New York law provides for products liability claims "under theories of negligence, strict liability, or breach of express or implied warranty." *Lewis v. Abbott Labs.*, 2009 WL 2231701, at *4 (S.D.N.Y. July 24, 2009) (citing *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (N.Y. Ct. App. 1983)); *accord Deng v. Ford Motor Co.*, 87 N.Y.2d 248 (N.Y. Ct. App. 1995). It is also clear that "whether [an] action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury and, . . . that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued." *Fritz v. White Consol. Indus., Inc.*, 306 A.D.2d 896, 897 (N.Y. App. Div. 4th Dep't 2003) (quoting *Tardella v. RJR Nabisco, Inc.*, 178 A.D.2d 737, 737 (N.Y.

---

[5] In a previous Memorandum-Decision and Order, the Honorable David N. Hurd, United States District Judge, found that Plaintiff's Complaint adequately stated a products liability claim under implied warranty, failure to warn, and defective design/manufacture theories against Defendant S&W. *See* Dkt. No. 36, Mem.-Dec. & Order at pp. 10–11.

App. Div. 3d Dep't 1991); *accord Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013)(citing *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d at 107); *see also Pinello v. Andreas Stihl Ag & Co. KG*, 2011 WL 1302223, at \*10 (N.D.N.Y. Mar. 31, 2011) (quoting *Tardella v. RJR Nabisco, Inc.*).

Whether under a negligence or strict liability theory, "a plaintiff may allege that a product is defective for any one of the following three reasons: (1) design defect, (2) a failure to warn, or (3) defect as a result of a manufacturing flaw." *Colon ex rel. Molina v. BLC USA, Inc.*, 199 F. Supp. 2d 53, 82-83 (S.D.N.Y. 2001) (citing *Sage v. Fairchild-Swearingen Corp.*, 70 N.Y.2d 579 (N.Y. Ct. App. 1987)). A design defect "results when the product as designed is unreasonably dangerous for its intended use"; a warning defect "occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm"; and a manufacturing defect "results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997). Finally, in New York, products are sold with an implied warranty of fitness that the product is "fit for the ordinary purposes for which such goods are used." *Colon ex rel. Molina v. BLC USA, Inc.*, 199 F. Supp. 2d at 95 (quoting *Denny v. Foster*, 87 N.Y.2d at 258.

As explained below, Plaintiff cannot establish that the Model 90 handcuffs at issue were somehow defective and, therefore, he cannot establish a products liability claim under any theory.

### 1. Design/Manufacturing Defect

Pursuant to this Court's earlier ruling, it has been determined that the handcuffs worn by Plaintiff on July 9, 2009, were S&W Model 90. *See* Dkt. No. 80, Order, dated Jan. 4, 2013, at p. 3,

*aff'd* Dkt. No. 97, Order, dated May 24, 2013.[6]  There is no dispute that the actual pair of S&W

Model 90 handcuffs Plaintiff wore on July 9, 2009, was destroyed prior to the start of this litigation.

*See* Dkt. No. 79, Lt., dated Dec. 21, 2012, at pp. 1–3, & Exs. 1–3; Dkt. Nos. 85-11, Ex. C, at

Interrog. 1, & 85-13, Ex. E, at Interrogs. 3, 4, & 10.  Moreover, Plaintiff admits that he did not

inspect the handcuffs after removal, nor was he able to hire an expert witness to do so before the

handcuffs were destroyed.  Hayes Dep. at pp. 114–15.  Thus, Plaintiff has no direct proof that the

handcuffs were somehow defective in their design or manufacture,[7] and because the handcuffs have

been destroyed, he is now effectively precluded from doing so.

---

[6] The law of the case doctrine is a seminal principle of law.  Essentially, under this doctrine, any decision made on an issue of law made at one stage of a case becomes a binding precedent to be followed throughout the litigation.  "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991) (citations omitted).  "While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties."  *Id.* (citations omitted).

    The underlying considerations of this doctrine are obvious: To maintain fairness to the parties; to maintain consistency throughout the litigation; to avoid reconsideration of matters once decided during the course of the litigation; and to promote judicial economy and societal interest in finality.  *Prisco v. A & D Cartin Corp.*, 168 F.3d 593 (2d Cir. 1999); *Soto-Lopez v. NYC Civil Serv. Comm'n*, 840 F.2d 162 (2d Cir. 1998) (a litigant should not be allowed to disregard this doctrine to prejudice the party seeking the benefit of the doctrine); *see also County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).

[7] In his Opposition to S&W's Motion for Summary Judgment, Plaintiff claims that an "expert Lock-smith from Great Meadow Correctional Facility, Peter Lensey, examined the model #90 handcuffs . . . and after this inspection he determined that the . . . handcuffs had an internal malfunction."  Pl.'s Resp. to S&W's 7.1 Statement at ¶ 9.  In support of this claim he cites to "S&W 0002," a document which he does not produce. *Id.* at ¶ 23.  However, S&W has produced a copy of this document.  Dkt. No. 85-14, Ex. A, at S&W 0002.  S&W 0002 is an undated, typewritten letter from "Peter Lindsey locksmith," at GMCF, which states "Please be advised that as locksmith for Great Meadow Corr. Facility, I was given 1 set of handcuffs and 1 set of leg irons, upon inspection there seems to be some internal malfunction with these restraints any assistance would help."  *Id.*

    Construed liberally it is possible that Plaintiff intended to offer this letter as direct evidence of a defect in the handcuffs at issue.  However, this letter is insufficient as a matter of law for that purpose.  To begin with there is nothing in the letter indicating that it pertains to the pair of handcuffs Plaintiff was wearing on July 9, 2009.  The letter is undated, and does not identify the serial number or internal identification number of the handcuffs in question; though there are handwritten notations on the letter indicating that the letter pertains to handcuffs with a serial number of 970914.  *Id.*; *see also* Dkt. No. 93, S&W's Reply, at pp. 6–7, & n. 9.  The serial number of the S&W Model 90 handcuffs Plaintiff wore on July 9, 2009, began with the numbers 29, and not 97.  *See* Dkt. No. 79, Lt. at pp. 1–3, & Exs. 1–3.  Thus, it is not even possible to confirm that the letter even pertains to Plaintiff's handcuffs.  Moreover, even if it did, Mr. Lensey is not an expert witness.  Indeed, other than Plaintiff's passing reference to him as an "expert," there is nothing in the record to suggest that any party intended or has attempted to introduce him as such.  Therefore, no reasonable juror could conclude that this letter alone establishes direct evidence of a defect in S&W's product.

However, the absence of direct evidence of a specific defect is not necessarily fatal to Plaintiff's design/manufacturing defect theory. Where direct evidence is unavailable – *i.e.,* because the product has been destroyed – a plaintiff can still establish a product liability claim through circumstantial evidence that (1) "the product did not perform as intended," and (2) "that all other possible causes for the product's malfunction are excluded." *Norton v. Albany Cnty. Airport Auth.,* 52 A.D.3d 871, 873-74 (N.Y. App. Div., 3rd Dep't 2008) (citing *Speller v. Sears, Roebuck & Co.,* 100 N.Y.2d 38, 41 (N.Y. Ct. App. 2003) & *Maciarello v. Empire Comfort Sys.,* 16 A.D.3d 1009, 1011 (App. Div., 3rd Dep't 2005)); *see also Jarvis v. Ford Motor Co.,* 283 F.3d 33, 45–46 (2d Cir. 2002) (citing cases for the proposition that in New York circumstantial proof is sufficient to establish product liability under any of the four possible theories). Where a defendant offers evidence of an alternative theory to explain why the product did not perform as intended, that does not involve a defect in the product, the burden then shifts to the plaintiff to rebut the theory. *See Speller v. Sears, Roebuck & Co.,* 100 N.Y.2d at 43–44. To successfully rebut an alternative theory of causation and survive summary judgment, the plaintiff is not required to produce evidence which definitively excludes all other possible causes. Rather, the plaintiff need only establish "the existence of 'a triable question of fact by offering competent evidence which, if credited by the jury, [i]s sufficient to rebut . . . alternative cause evidence." *Norton v. Albany Cnty. Airport Auth.,* 52 A.D.3d at 874 (citing *Speller v. Sears, Roebuck & Co.,* 100 N.Y.2d at 43).

Here, Plaintiff claims that the handcuffs did not perform as intended because rather than unlocking with a key, it had to be cut off. *See* Dkt. No. 36, Mem. Dec. & Order, at p. 11. Even if we were to accept this theory as conclusive evidence that the product did not perform as intended, Plaintiff still fails to establish his claim through circumstantial evidence. Plaintiff has not offered

competent evidence from which a reasonable juror could exclude the alternative theories of causation advanced by S&W. Specifically, S&W suggests that the cuffs did not perform as intended because (1) the State Defendants attempted to open the cuffs with the wrong key, (2) and/or in the thirty-three to fifty-seven years since the handcuffs were manufactured, it may have been improperly cared for and/or poorly maintained. S&W's Mem. of Law at p. 15.

S&W informs that "each set of Smith & Wesson handcuffs is supplied with a Smith & Wesson key, and optimal functioning of the locking mechanism requires use of the Smith & Wesson key." Dkt. No. 85-15, Herb Berlin Aff., dated Feb. 13, 2013, at ¶ 7. It is further undisputed that in addition to S&W handcuffs, guards at GMCF carry and use handcuffs manufactured by Peerless Handcuff Company and Galls. *See* Dkt. No. 85-13, Ex. E, at Interrog. 2. Moreover, according to Plaintiff, on July 9, 2009, officers at GMCF "used all kinds of keys. . . . to try and open [his cuffs] and no key would open them." Hayes Dep. at p. 110. Lastly, State Defendants have no record of who manufactured the various keys that were used to try and open Plaintiff's cuffs on July 9, 2009. *See* Dkt. No. 85-11, at Interrogs. 4 & 7. Thus, the evidence offered by S&W clearly establishes a plausible alternative theory as to why the cuffs did not perform as expected; *i.e.*, that Defendants failed to use the correct key, or that by using multiple non-S&W keys Defendants' damaged the locking mechanism.

In rebuttal, Plaintiff claims he "witnessed officer Jones verify the correct key." Pl.'s Resp. to S&W's 7.1 Statement at ¶ 27. However, the notion that Plaintiff watched Defendant Jones verify the correct key is wholly incredible in light of his previous Deposition testimony. At his Deposition, Plaintiff was examined at length about this precise issue and there he testified as follows:

> Q    You don't - - I take it you don't know what type of key Officer Jones is using?

| | |
|---|---|
| A | No. They used various keys that evening. |
| Q | Right. Well, I'm talking about the first one. You don't know what type of key he tried to use? |
| A | No, I don't. |
| Q | You don't know whether it was compatible with a set of cuffs that Officer Burch had applied? |
| A | You would have to ask him that. . . |
| Q | [D]o you know whether the keys that were being used or tried in those cuffs were original equipment from Smith & Wesson and came with the cuffs themselves? |
| A | No, I remember at one point they was talking about a master key or something like that. So they used all kinds of keys. You know, different officers came in between. And that evening it was like five to ten different officers and lieutenant and captains that came in and everybody was using a different key to try to open them and no key would open them. . . . |
| Q | Do you know what was eventually used to open the right cuff? |
| A | It was a key. |
| Q | Do you know which kind? |
| A | No, I don't. |
| Q | Do you know - - |
| A | But they was using that key also to try to open the left one and it wouldn't open. And the right one took about an hour to open with different keys. |

Hayes Dep. at pp. 108–11.

Under the "sham issue of fact" doctrine, a plaintiff cannot defeat summary judgment "simply by submitting an affidavit that contradicts his previous sworn testimony. *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (citing *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969)). Thus, Plaintiff's attempt to resurrect this issue by making an about face change in his position is unavailing. As this is Plaintiff's only rebuttal evidence to S&W's alternative causation theory, Plaintiff has failed to raise a genuine issue of material fact from which a reasonable juror could exclude the possibility that the cuffs did not perform as intended on July 9, 2009, because the State Defendants attempted to open them with the wrong key.

Likewise, Plaintiff has failed to offer competent evidence which would exclude Defendants' second alternative explanation – that the cuffs would not open on July 9, 2009, because they had

been improperly maintained during the thirty plus years since they were manufactured. It is undisputed that S&W only manufactured Model 90 handcuffs between 1955 and 1979, and although the exact manufacturing date for the set of handcuffs worn by Plaintiff is unknown, it is clear that the set was between thirty-three and fifty-seven years old. Berlin Aff. at ¶ 6; Dkt. No. 85-12, at Interrog. 27. It is possible that the locking mechanism could have been damaged or neglected during that time, causing the locking mechanism not to perform as intended on July 9, 2009. Indeed, even if it had been properly maintained during that period, the age of the apparatus alone could explain its failure to function properly.

Notwithstanding Plaintiff's claims that the "Department of Corrections has standards for the maintenance of the handcuffs they use[,]" he has produced neither a copy of those standards, nor any record that the particular pair of handcuffs at issue in this case were ever serviced or maintained according to those standards. *See* Pl.'s Resp. to S&W's 7.1 Statement at ¶ 20. Thus, Plaintiff has failed to raise a genuine issue of material fact from which a reasonable juror could exclude the possibility that it was poor maintenance or simply the age of the handcuffs that caused them to malfunction on July 9, 2009.

Therefore, Plaintiff has failed to produce either direct or circumstantial evidence that Defendant S&W's handcuffs were defectively designed or manufactured. Accordingly, Plaintiff is also precluded from establishing that any design or manufacturing defect existed at the time of manufacture. *See Henry v. Gen. Motors Corp., Chevrolet Motor Div.*, 201 A.D.2d 949 (N.Y. App. Div. 4th Dep't 1994) ("In a case based entirely upon circumstantial evidence, the jury may infer that the product was defective when it left the manufacturer's control only if plaintiff excludes all causes of the accident not attributable to defendant.") (citing *Halloran v. Virginia Chems.*, 41 N.Y.2d 386,

388, 393 (N.Y. Ct. App. 1977) & *Shelden v. Hample Equip. Co.,* 453 N.Y.S.2d 934 (N.Y. App. Div. 3rd Dep't), *aff'd,* 59 N.Y.2d 618 (N.Y. Ct. App. 1983)).

## 2. Implied Warranty

To establish a breach of an implied warranty a Plaintiff must show "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident." *Pinello v. Andreas Stihl Ag & Co. KG*, 2011 WL 1302223, at *17 (N.D.N.Y. Mar. 31, 2011). Here Plaintiff is precluded from establishing that S&W breached it's implied warranty, because, as explained *supra*, Plaintiff has failed to show that the product was defectively designed or manufactured. *See id.* (citing *Dalton v Stedman Mach. Co.*, 2008 WL 351676 at *7 (N.D.N.Y. Feb 7. 2008) for the proposition that "[l]iability under strict products liability and implied warranty theory are essentially the same.").

## 3. Failure to Warn

Unlike Plaintiff's other potential claims, even where a product is "perfectly designed and made" a manufacturer may still have a duty "to warn of dangers [resulting from] the use of the product." *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 440 (S.D.N.Y. 1999) (quoting *Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir. 1991) (citing *Baker v. St. Agnes Hosp.,* 421 N.Y.S.2d 81, 85 (N.Y. App. Div. 2d Dep't 1979)). To establish a failure to warn claim Plaintiff must show that at the time the Model 90 handcuffs left S&W's manufacturing facility it lacked warnings that it should have contained or contained warnings which were inadequate. *McCarthy v. Olin Corp.*, 119 F.3d at 154-55. Thus, Plaintiff must show "(1) a duty on the manufacturer's part; (2) to warn of dangers from foreseeable uses; (3) which failure proximately caused harm to the plaintiff." *Beneway*

*v. Superwinch, Inc.*, 216 F. Supp. 2d 24, 28 (N.D.N.Y. 2002) (Hurd., J.) *(citing Colon ex rel. Molina v. BIC USA, Inc.,* 199 F. Supp. 2d at 84 & *Cresser v. American Tobacco Co.,* 662 N.Y.S.2d 374, 379 (N.Y. Sup. Ct. 1997)).  Here, Plaintiff claims that despite knowing that its product was dangerous "Smith and Wesson provides no information about it,s [sic] product[s] potential to malfunction, nor does Smith and Wesson train and inform its consumers how to respond in cases of handcuffs malfucntion[.]"  Compl. at ¶ 26.  Construed liberally, such allegations raise a claim under a failure to warn theory.[8]

However, even assuming that the alleged injury in this case resulted from a foreseeable use of S&W's product, Plaintiff's claims would still fail because he has failed to offer any proof that the failure to warn was the proximate cause of his injuries.  *Banker v. Hoehn*, 278 A.D.2d 720, 722 (N.Y. App. Div. 3d Dep't 2000).  Plaintiff has failed to offer any evidence that even if a different warning had been issued, the user of the product (in this case Defendant Burch) would have read and heeded that warning.  Thus, Plaintiff has failed to meet his burden to establish a failure to warn claim.  *See Sosna v. Am. Home Products*, 298 A.D.2d 158 (N.Y. App. Div. 1st Dep't 2002) (citing cases for the proposition that under New York State law, plaintiff's burden to prove proximate cause includes "adducing proof that the user of a product would have read and heeded a warning had one been given.").  Moreover, given Plaintiff's inability to establish that the handcuffs were defective, it is implausible to suggest that a warning would have affected the outcome of this particular case.

Therefore, Plaintiff has failed to establish a claim for products liability against S&W under

---

[8] Plaintiff's unequivocal statement that Defendants provided "no information" about the potential danger its product posed cannot also be interpreted as meaning that Defendants provided some warnings/information but that such warnings were inadequate.  Moreover, Plaintiff has introduced no evidence of what warnings were or were not issued by S&W when it originally sold the Model 90 handcuffs between thirty-three and fifty-seven years ago.  *See generally* Compl.  Therefore, we do not construe Plaintiff's Complaint as raising a products liability claim under an inadequate warning theory.

an implied warranty, defective design or manufacture, or failure to warn theory and we recommend that S&W's Motion be **GRANTED**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that S&W's Motion for Summary Judgment (Dkt. No. 85) be **GRANTED** in its entirety and S&W be dismissed from this action; and it is further

**RECOMMENDED**, that State Defendants' Motion for Summary Judgment (Dkt. No. 86) be **GRANTED** in part and **DENIED** in part as follows:

1. **GRANTED** as to Plaintiff's claims against Defendants DOCCS and the State of New York;
2. **GRANTED** as to Plaintiff's claims against State Defendants Burch, Jones, and Wright in their official capacities;
3. **DENIED** as to Defendants excessive force claims against Burch, Jones,[9] and Wright; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

---

[9] This includes Plaintiff's claim that Defendant Jones used excessive force against him after he was handcuffed by Defendant Burch, a claim which the State Defendants did not move to dismiss. *See supra* fn.2.

Date:   August 27, 2013
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge